J-S37020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DERRICK DAVIS, | |
| Appellant | No. 2045 EDA 2014 |

Appeal from the PCRA Order June 27, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006649-2007, Nos. CP-51-CR-
0006712-2007

BEFORE:  GANTMAN, P.J., SHOGAN, and LAZARUS, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED AUGUST 27, 2015**

Derrick Davis ("Appellant") appeals from the order denying his petition

for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S. §§ 9541-9546.  We affirm.

On direct appeal, a panel of this Court summarized the underlying

facts and procedural history of this case as follows:

> On March 12, 2007, [Appellant] was arrested and charged
> in connection with the October [4], 200[3] shooting death of
> Terr[a]nce Barron ("Barron") and the August 5, 2006 shooting of
> William Flournoy ("Flournoy"), the only eyewitness to Barron's
> murder. [Appellant] filed a motion to suppress Flournoy's
> identification of him as the shooter in both incidents, and after
> holding an evidentiary hearing the trial court denied the motion.
> On January 26, 2009, [Appellant] and Christopher Willis, his
> alleged co-conspirator in Barron's death, were tried as co-

defendants at a jury trial. The jury convicted [Appellant] of the above-referenced crimes.[1]

On August 12, 2009, [Appellant] received the following concurrent sentences: life in prison (for first degree murder), 10–20 years of incarceration (for conspiracy), 10–20 years of incarceration (for attempted murder), 1–2 years of incarceration (for retaliation against a witness), 5–10 years of incarceration (for intimidating a witness), and 1–2 years of incarceration (for each of two counts of possession of an instrument of crime). He received no further penalty for aggravated assault and for recklessly endangering another person.

*Commonwealth v. Davis*, 17 A.3d 390, 393 (Pa. Super. 2011).[2] That panel affirmed the judgment of sentence, *id.* at 399, and the Pennsylvania Supreme Court denied allowance of appeal. *Commonwealth v. Davis*, 29 A.3d 371 (Pa. 2011).

Appellant filed the instant PCRA petition on July 26, 2012. The PCRA court filed a Pa.R.Crim.P. 907 notice on May 16, 2014, advising Appellant of its intent to dismiss the petition without a hearing, and then formally denied relief on June 27, 2014. This timely appeal followed. Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following questions for our consideration:

---

[1] Co-defendant Christopher Willis was also convicted and filed an appeal at 1695 EDA 2014.

[2] For a detailed recitation of the facts underlying the murder of Terrance Barron see this Court's decision in *Commonwealth v. Willis*, 2772 EDA 2009, 23 A.3d 1079 (Pa. Super. filed January 11, 2011) (unpublished memorandum at 1–3).

- 2 -

I.   Did the trial court err in denying relief where the prosecutor referred to [A]ppellant during closing argument as an "enforcer" and stated that the victim's murder was "drug-related" when there was no evidence to support either of those claims?

II.  Did the trial court err in failing to conduct an evidentiary hearing on [A]ppellant's claim that trial counsel was prejudicially ineffective when he failed to object to the prosecutor's "enforcer" and "drug-related murder" statements during closing argument?

III. Did the trial court err when it concluded that the United States Supreme Court's holding in Miller v. Alabama, 132 S.Ct. 2455 (2012) that it is unconstitutional to sentence a defendant who was a juvenile at the time he committed a murder to life imprisonment without the possibility of parole does not apply retroactively to cases in which the defendant's conviction became final before Miller was decided?

Appellant's Brief at 1–2.

When reviewing the propriety of an order denying PCRA relief, this Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. **Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa. Super. 2014).

In order to obtain collateral relief, a PCRA petitioner must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2). Instantly, Appellant claims ineffective assistance of counsel

("IAC") pursuant to 42 Pa.C.S. § 9543(a)(2)(ii).[3]  To plead and prove IAC, a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act.  *Rykard*, 55 A.3d 1177, 1189–1190 (Pa. Super. 2012).  A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet **any one** of these prongs. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).  We reiterate that counsel's representation is presumed to have been effective, unless the petitioner proves otherwise.  *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999).  Further, we have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim.  *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Appellant argues that counsel was ineffective in failing to object to the prosecutor's inappropriate reference to Appellant as "an enforcer" and characterization of the crime as a "drug-related murder."  Appellant's Brief at 8.  According to Appellant, "there was no evidence presented at trial that

_____

[3]  Additionally, we note that Appellant combines his discussion of the first two issues in his appellate brief.  This violates Pa.R.A.P. 2119(a), which provides as follows:  "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."  Nonetheless, because our appellate review is not hampered, we shall address Appellant's first two issues.

the victim's murder had anything to do with the illegal narcotics business much less proof that [A]ppellant was an 'enforcer' for his co-defendant." *Id.*

Prosecutorial misconduct does not occur unless the unavoidable effect of the comments at issue is to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. *Commonwealth v. Riggle*, 2015 PA Super 147, ___ A.3d ___ (Pa. Super. filed July 7, 2015) (quoting *Commonwealth v. Bryant*, 67 A.3d 716, 727–728 (Pa. 2013)). A "prosecutor must be free to present his or her arguments with logical force and vigor." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1146 (Pa. 2011) (quoting *Commonwealth v. Robinson*, 864 A.2d 460, 517 (Pa. 2004)). Pennsylvania courts have permitted prosecutorial advocacy "as long as there is a reasonable basis in the record for the [prosecutor's] comments." *Robinson*, 864 A.2d at 516. "Prosecutorial comments based on the evidence or reasonable inferences therefrom are not objectionable, nor are comments that merely constitute oratorical flair." *Chmiel*, 30 A.3d at 1145 (citation omitted). Furthermore, the prosecution must be permitted to respond to defense counsel's arguments. *Id.* Any challenged prosecutorial comment **must not be viewed in isolation**, but rather must be considered in the context in which it was offered. *Robinson*, 864 A.2d at 517 (emphasis supplied).

Applying the above legal standards, the PCRA court addressed the prosecutor's "enforcer" reference as follows:

It is clear that the prosecution's closing remarks were reasonably based on the record from this trial and did not merit a mistrial. . . . On October 4, 2003, William Flournoy was present during the murder of Terrance Barron, as they shared a home together along with the victim's then girlfriend, Valerie Ware. During the investigation of this murder and the subsequent trial[,] William Flournoy identified the Appellant and [co-defendant] Christopher Willis as the individuals that murdered Terrance Barron.

On March 31, 2005, William Flournoy testified at a preliminary hearing as a Commonwealth witness against Christopher Willis. Subsequently, on July 14, 2006 William Flournoy resided with his elderly parents on Paschall Avenue and was visited by the Appellant. At trial William Flournoy testified that his doorbell rang at approximately 11:30 p.m. William Flournoy opened the door and stated, "I saw a young black male standing outside with a pizza box in his hand." Then, William Flournoy told the individual the pizza was not for him and closed the door. A few moments later, William Flournoy's doorbell rings again and the same individual was standing in his doorway. The witness testified that "it registered that was the guy in the house that I saw the night Terry was murdered . . . he was holding the pizza box with one hand like this and he had – I would say he had his gun in his right hand under the pizza box." The Appellant locked eyes with William Flournoy and fired his gun. William Flournoy "ducked" in order to not be shot and the bullet went through the screen door and up into the ceiling. William Flournoy looked out the peep hole of his door and watched the Appellant get into a green car and speed away. William Flournoy never reported this incident to the police because he did not want his elderly parents to live in fear that they could be attacked in their home.

This was not the Appellant's only attempt to kill William Flournoy. On August 5, 2006 at approximately 12:05 am William Flournoy was returning from a local deli, riding his bike home when he noticed a green car coming around the bend. William Flournoy testified that he saw the Appellant "jump out of his car and had his hands on his hip." The victim attempted to

flee into a vacant lot near his home but could not manage to escape being shot by the Appellant. William Flournoy testified at this trial and stated, "I heard the shot ring out. The shot came in my chest, traveled up – actually came in my lower stomach, traveled up, came out my chest, went up, broke my jaw, and shattered my teeth." William Flournoy was treated for his injuries at the University of Pennsylvania Hospital for several days, was questioned by police in reference to this shooting, and told the police "that he was a witness for a murder and he was shot by one of the people that he knows murdered Terry." On January 31, 2007, after being shown photos by detectives, William Flournoy, identified the Appellant as the individual who attempted to kill him and as one of Terrance Barron's murderers. . . .

* * *

When viewing this case as a whole, the evidence and testimony presented at this trial indicate that the Appellant acted as an enforcer when viewing the term in even its most elementary form. At trial, the witness and subsequent victim William Flournoy identified the Appellant not only as the individual that participated in the murder of Terrance Barron but also as the individual that attempted to kill him.

PCRA Court Opinion, 9/10/14, at 5–7 (footnotes omitted).

Our review of the record supports the PCRA court's findings regarding the prosecutor's reference to Appellant as an "enforcer." N.T., 1/28/09, at 16–17; N.T., 1/29/09, at 40–41. Additionally, the record indicates that, during the murder, Flournoy heard Appellant direct co-defendant Willis, "Pass me the gun." N.T., 1/28/09, at 11, 19–21. Flournoy then saw Willis pass Appellant the gun, and Appellant "shot the gun into the ground." *Id.* Such evidence further supports the prosecutor's inference that Appellant played the role of enforcer.

- 7 -

With regard to the prosecutor's comment that this was a drug-related crime, the record contains evidence supporting such an inference. William Flournoy testified that he used crack cocaine and had purchased it from co-defendant Willis on numerous occasions. N.T., 1/28/09, at 15–17; N.T., 1/29/09, at 40–41. Terrance Barron also used drugs and had cocaine in his system when he was shot. N.T., 1/26/09, at 71; N.T., 1/28/09, at 17.

We agree with the Commonwealth's assertion that the cases Appellant relies on in support of his position are distinguishable because "they involve comments of a very different quantity and quality." Commonwealth's Brief at 15. Unlike Appellant's cases, the prosecutor herein made one passing reference to this being a drug-related case and to Appellant being an enforcer. These comments were reasonable inferences drawn from the evidence adduced at trial and not likely to have the unavoidable effect of prejudicing the jurors by forming in their minds a fixed bias and hostility toward Appellant, thus impeding their ability to weigh the evidence objectively and render a true verdict. **Riggle**, 2015 PA Super 147. In light of the record at hand, we conclude that Appellant's underlying claim lacks merit. Therefore, his derivative IAC claim does not warrant relief.

Having argued that the underlying claim has merit, Appellant invites us to remand for an evidentiary hearing "[t]o the extent that this Court believes that there is a question of fact" regarding whether counsel had a rational basis for not objecting to the prosecutor's offensive closing remarks.

Appellant's Brief at 9. We decline Appellant's invitation. The right to an evidentiary hearing on a PCRA petition is not absolute, and the PCRA court may decline to hold a hearing if the petitioner's claims are patently frivolous with no support in either the record or other evidence. ***Commonwealth v. Walls***, 993 A.2d 289 (Pa. Super. 2010); Pa.R.Crim.P. 907. ***See also Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008) ("There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary."). Having found no support in the record for Appellant's IAC claim, we further find no abuse of discretion by the PCRA court in dismissing Appellant's petition without a hearing. Thus, Appellant's second issue does not warrant relief.

Lastly, Appellant challenges his sentence of life without parole as unconstitutional pursuant to ***Miller v. Alabama***, ___ U.S. ___, 132 S.Ct. 2455 (2012). In ***Miller***, the United States Supreme Court held that a mandatory life sentence without parole imposed on a defendant under the age of eighteen at the time of his crime violates the Eighth Amendment prohibition of cruel and unusual punishment. Our Pennsylvania Supreme Court has held that the ***Miller*** Court did not, itself, give retroactive effect to the new rule it announced, and ***Miller*** is not otherwise retroactive under the

- 9 -

first **Teague**[4] exception. **Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013), *cert. denied*, ___ U.S. ___, 134 S.Ct. 2724 (2014). We are bound by the decisions of our Supreme Court and, therefore, our decision herein is controlled by this statement of the law.

Appellant informally requests that we "stay our hand" on appeal until the United States Supreme Court reaches a decision regarding the retroactivity of **Miller** in **State v. Toca**, 141 So.3d 265 (La. 2014), *cert. granted*, **Toca v. Louisiana**, ___ U.S. ___, 135 S.Ct. 781 (2014), *cert. dismissed*, ___ U.S. ___, 135 S.Ct. 1197 (2015). Appellant's Brief at 10. We note, however, that the writ of *certiorari* granted in part in **Toca** was dismissed upon written agreement of the parties under Supreme Court Rule 46(1) on February 3, 2015. On March 23, 2015, the Supreme Court granted *certiorari* in **State v. Montgomery**, 141 So.3d 264 (La. 2014), *cert. granted*, **Montgomery v. Louisiana**, ___ U.S. ___, 135 S.Ct. 1546 (2015), which also presents the **Miller** retroactivity question. Until the United States Supreme Court issues a contrary decision, **Cunningham** remains the final

---

[4] **Teague v. Lane**, 489 U.S. 288 (1989). The **Teague** Court "delineated a general rule of non-retroactivity for new procedural, constitutional rules announced by the Court, . . . subject to two narrow exceptions. . . . The exceptions extend to "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense," and "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." **Cunningham**, 81 A.3d at 4–5.

word in Pennsylvania on the issue of **Miller**'s retroactivity, and it does not

afford Appellant relief from his life sentence.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/27/2015